# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

United States of America,

      Plaintiff,

v.

Dimitri Lamar Accardo-Rainey,
*also known as* Meech, *also known as*
Mich, *also known as* Mitch,

      Defendant.

Crim. No. 23-229 (JWB/LIB)

**ORDER ACCEPTING
REPORT AND RECOMMENDATION
OF MAGISTRATE JUDGE**

---

Lauren Olivia Roso, Esq., United States Attorney's Office, counsel for Plaintiff.

Matthew Deates, Esq., Office of the Federal Defender, counsel for Defendant.

---

Defendant Dimitri Lamar Accardo-Rainey is charged with one count of conspiracy to distribute fentanyl (Count One), three counts of distribution of fentanyl (Counts Two to Four), and one count of being a felon in possession of a firearm (Count Five). (*See generally* Doc. No. 1, Indictment.) Accardo-Rainey has filed objections to the November 30, 2023 Report and Recommendation ("R&R") issued by United States Magistrate Judge Leo I. Brisbois (Doc. Nos. 43, 46). Accardo-Rainey objects to the R&R's recommendations to deny his Motion to Suppress Evidence (Doc. No. 23) and his Motion to Dismiss Count Five of the Indictment (Doc. No. 21). After review, Accardo-Rainey's objections are overruled and the R&R is adopted.

## BACKGROUND

The factual background of this case is fully set forth in the R&R and is

incorporated by reference. (*See* Doc. No. 43 at 9–18.) Only a brief summary is provided here.

Law enforcement officers were investigating a homicide that took place in St. Cloud, Minnesota on January 17, 2023, unrelated to the charges against Accardo-Rainey. The suspected perpretrator fled the scene in a gray SUV with multiple companions, and was apprehended a day later. Law enforcement was unable to locate the suspected murder weapon—a handgun. In interviewing one of the suspect's companions, law enforcement learned that the suspect had exited the vehicle near the Oak Street Townhouses complex shortly after leaving the scene, and did not leave his handgun behind. Officers met with Oak Street Townhouses employees on January 24, 2023—exactly one week later—to review the surveillance footage. The footage revealed that the suspect entered the apartment at 435 15th Avenue Southeast (the "Residence") within minutes of the 911 call reporting the homicide. Employees identified C.L. as the tenant of the Residence. Law enforcement officers subsequently went to the Residence to speak with C.L. about the night of the homicide, activating their body cameras before knocking.

After a brief conversation, C.L. permitted the officers to enter the Residence to discuss the night of the homicide, but did not consent to a search. Law enforcement informed C.L. that they would seek a search warrant, and remained on the premises to purportedly secure the scene in the interim. Officers learned from C.L. that Accardo-Rainey resided in the basement of the Residence. C.L. called Accardo-Rainey upstairs where he engaged with officers, asked to see a search warrant, and requested that they wait outside. Officers declined to exit the Residence, and after approximately fifteen

minutes requested that C.L. and Accardo-Rainey step outside. Shortly afterwards, another group of officers arrived to arrest Accardo-Rainey on separate charges.

The Honorable Robert Raupp, District Court Judge for the State of Minnesota, Seventh Judicial District, County of Benton, determined that probable cause existed to support the issuance of the January 24, 2023, Search Warrant. Law enforcement executed the warrant and discovered multiple items of contraband, including the two firearms at issue.

The affidavit supporting issuance of the warrant, (Gov't Ex. 1), contained the following key facts establishing grounds for issuance:

- "On 01/17/2023 at approximately 2351 hours officers of the St. Cloud Police Department were dispatched . . . for a shooting complaint."

- "Officers . . . found an unresponsive male . . . . [T]he male was declared deceased shortly after arrival."

- [An officer] advised Your Affiant that he observed apparent gunshot wounds to the victim . . . ."

- "[V]ideo surveillance of this area was reviewed and a gray-ish SUV . . . is observed pulling into the area shortly before the 911 call."

- "After exiting, two of the males re-enter the building. While they are inside . . . the video system records apparent gunshot sounds."

- "[T]here was apparent controlled substance [sic] individually packaged for sale."

- Separately, a suspect was arrested in connection with a different shooting taking place on 01/18/2023. An unnamed witness indicated that the suspect may have been involved in the 01/17/2023 shooting, along with "A.P." and two others.

- "[A.P.] . . . advised that him, . . . [the suspect], and a fourth male . . . went to [the homicide location] to purchase marijuana."

- The suspect made a comment to [A.P.] "which led him to believe that [the suspect] shot the victim. At that point, [A.P.] stopped the vehicle and made [the suspect]

get out . . . . in the area of Oak Street Townhomes."

- "[A.P.] indicated that [the suspect] did not leave the handgun in the vehicle, and as of 1/24/23, the handgun used in this homicide had not been recovered. Additionally, investigators . . . have not located a cellular phone believed to have been possessed by [the suspect]."

- "On 1/24/23, Investigators met with management for the Oak Street Townhouses to review a surveillance video . . . [and] were able to observe a male, believed to be [the suspect], running through the . . . complex on 1/14/23 at 2352 hours. That time is apprixmately one minute after the 911 call was made to dispatch."

- "The male went to 435 15th Ave SE apartment #1 and was ultimately let inside. The tenant of apartment #1 was identified . . . ."

- "Investigators went . . . to speak with [the tenant]. . . . She also would not give consent for Investigators to search her apartment."

- "Based on the fact that [the suspect] was observed entering her apartment within minutes of the homicide occurring, your Affiant respectfully requests to search [the Residence] for the aforementioned items related to this investigation."

Accardo-Rainey objects to the R&R's factual recitation, asserting that it improperly failed to include and consider the following facts disclosed at the hearing on his motions: (1) there was no probable cause related to C.L. herself; (2) C.L. did not consent to investigators remaining inside the apartment while waiting for a warrant; (3) investigators searched for other occupants and scanned the living room; (4) investigators told Accardo-Rainey and C.L. that they were detained; (5) investigators questioned Accardo-Rainey without *Miranda* warnings; and (6) Accardo-Rainey was arrested on a "PC pickup" by a separate group of officers. Upon review, however, there is no fault in the R&R's fact section. Accardo-Rainey's "fact" objections concern both facts and law (the existence of probable cause), and include both facts expressly acknowledged and considered by the R&R as well as ancillary facts not relevant to consideration of his

4

motions. Relatedly, Accardo-Rainey does not explain how these facts would impact the R&R's analysis with any specificity. This objection, to the extent that it may be considered a valid objection, is overruled.

## DISCUSSION

### I.    Standard of Review

A district court reviews the portions of an R&R to which a party objects de novo and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); D. Minn. LR 72.2(b)(3).  The portions of an R&R to which no specific objection is made are reviewed for clear error. *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996).

### II.   Motion to Supress

Accardo-Rainey objects to the R&R's determination that law enforcement acted lawfully in securing the premises while awaiting the search warrant and, alternatively, the determination that probable cause supported issuance of the search warrant. The probable cause analysis to some extent impacts the propriety of law enforcement's behavior while securing the premises, so that objection will be analyzed first.

#### A.    Probable Cause for the Search Warrant

Accardo-Rainey challenges the Magistrate Judge's finding that the search warrant affidavit at issue contained probable cause. Generally, probable cause exists if the affidavit shows "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Where an affidavit is the sole basis for a warrant, probable cause must be determined only using the content within

the four corners of the affidavit. *See United States v. Farlee*, 757 F.3d 810, 819 (8th Cir. 2014) (quotation omitted). The issuing magistrate's determination of probable cause is given "great deference" on review, although the conclusion still requires a "substantial basis." *Gates*, 462 U.S. at 236, 238–39 (quotations omitted).

Based on the totality of the information provided in the search warrant affidavit, there was a fair probability that evidence of the homicide would be found in the Residence. The affidavit described the homicide, the suspect, a description of the vehicle used to escape the scene, information from the suspect's associate that no weapon was left in the vehicle, surveillance footage of the suspect running into the Residence mere minutes after the 911 call was placed, and law enforcement's ongoing inability to locate the handgun used in the homicide. The affidavit clearly sets forth particularized facts regarding the nexus between the homicide and the Residence, sufficient to establish probable cause for the search. *United States v. Tellez*, 217 F.3d 547, 550 (8th Cir. 2000). Accardo-Rainey's objection is overruled.

Accardo-Rainey also argues that the warrant was issued on stale information because a week had passed since the crime was committed. Accardo-Rainey presented this exact argument to the Magistrate Judge, so it is not subject to de novo review here. *See Montgomery v. Compass Airlines, LLC*, 98 F. Supp. 3d 1012, 1017 (D. Minn. 2015) (observing that R&R objections that repeat arguments presented to and considered by a magistrate judge are are reviewed for clear error). Regardless, the argument plainly fails. The lone case Accardo-Rainey cites in support of this position, *United States v. Estey*, itself contradicts his argument that a week constitutes a "significant gap" in time such

that the information is de facto rendered stale. 595 F.3d 836, 840 (information not stale after five months). There is no bright line rule for when information becomes stale. *See United States v. Summage*, 481 F.3d 1075, 1078 (8th Cir. 2007) (quoting *United States v. Koelling*, 992 F.2d 817, 822 (8th Cir. 1993)). Months-long and even years-long gaps have been held insufficient to render information stale, depending on the context of the crime and property at issue. *Estey,* 595 F.3d at 840; *United States v. Maxim*, 55 F.3d 394, 397 (8th Cir. 1995) (upholding a warrant based on three-year-old information about illegal possession of a firearm). The determination is situational. In this case, there is no reason that just one week would render the underyling probable cause affidavit stale, especially as the suspected murder weapon was still missing.

Accardo-Rainey finally objects to the R&R's determination that the good-faith exception applies even if the affidavit lacked probable cause. Under the good-faith exception, if evidence is seized pursuant to a search warrant that lacked probable cause, that evidence remains admissible if the executing officer's good-faith reliance on the warrant was objectively reasonable. *United States v. Perry*, 531 F.3d 662, 665 (8th Cir. 2008) (citing *United States v. Leon*, 468 U.S. 897 (1984) (identifying four situations in which reliance is unreasonable)). Accardo-Rainey asserts that good faith cannot exist here because "the affidavit in support of the warrant is 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" This determination depends on the totality of the circumstances, "including any information known to the officers but not presented to the issuing judge." *United States v. Marion*, 238 F.3d 965, 969 (8th Cir. 2001) (citation omitted).

Accardo-Rainey offers only conclusory statements that fail to adequately explain the affidavit's supposed deficiencies. The affidavit referenced multiple witness statements and video evidence, all of which indicated the firearm allegedly used in the homicide was still missing, was not left in the vehicle, and that the suspected perpetrator entered the Residence within minutes of the homicide being reported. Even if there were not probable cause, there is clearly a sufficient nexus between the homicide, the suspect, the missing firearm, and the Residence that an officer's reliance would not be unreasonable—and the good-faith exception would apply. *See United States v. Dankemeyer*, No. 22-2850, 2023 WL 5423521, at *1 (8th Cir. Aug. 23, 2023).

Accardo-Rainey's objection to the R&R's probable cause determination therefore is overruled.

### B.     Law Enforcement Conduct in Securing the Premises

Accardo-Rainey objects that the R&R incorrectly determined that law enforcement lawfully occupied the apartment while awaiting a search warrant. As properly noted by the R&R, and not disputed by Accardo-Rainey, law enforcement was within its rights to approach the Residence and knock on the door, either to discuss the investigation or to ask for consent to search the premises. *United States v. Weston*, 443 F.3d 661, 667 (8th Cir. 2006). Investigator O'Leary asked C.L., the listed tenant of the Residence, if officers could enter to speak with her regarding the homicide investigation. C.L. permitted officers to come inside, but not to conduct a search. The officers' entry was constitutional pursuant to that permission. *See United States v. Cross*, 888 F.3d 985, 989 (8th Cir. 2018).

Accardo-Rainey objects to the R&R's finding that law enforcement was justified in securing the Residence while awaiting the search warrant, and argues that the magistrate judge misapplied factors sourced from *Illinois v. McArthur*, 531 U.S. 326 (2001). As an initial matter, law enforcement may reasonably secure a residence to prevent the destruction or removal of evidence while awaiting a search warrant without violating the Fourth Amendment. *Segura v. United States*, 468 U.S. 796, 810 (1984); *United States v. Hudspeth*, 518 F.3d 954, 960 (8th Cir. 2008).

Whether officers were reasonable in securing the scene as a preventative measure is the ultimate question, analyzed under the principles set forth in *McArthur*. *Riley v. California*, 573 U.S. 373, 391 (2014); *see also United States v. Burrell*, Crim. No. 06-81 (JNE/RLE), 2006 WL 1715608, at *21 (D. Minn. June 19, 2006). Reasonability in this case is dictated by the following circumstances, "consider[ed] in combination": whether officers had probable cause to believe the Residence contained evidence related to the January 17 homicide; whether that evidence could be destroyed before the warrant arrived; whether officers reasonably reconciled their needs with the demands of personal privacy; and the length of time officers secured the residence before receiving a warrant. *McArthur*, 531 U.S. at 331–33.

The first factor, probable cause, is discussed above. Based on the content of the affidavit—most notably the statements that the suspect fled into the Residence within minutes of the 911 call and that the murder weapon was still missing as of the date of the search a week later—officers both presented probable cause to the issuing magistrate judge and had a good-faith basis for believing they had probable cause.

Accardo-Rainey's objection to the Magistrate Judge's conclusion that the second factor (whether the evidence may be destroyed) is "not necessary" is misguided. It is not that the second factor is unnecessary in itself—rather, *specific supporting information* is not necessary for to independently conclude that evidence could be destroyed before the warrant arrives. *See United States v. Moore*, 956 F.2d 843, 848 (8th Cir. 1992) (taking judicial notice of the fact that substances could be easily destroyed despite no further evidence being submitted to that effect). This conclusion still depends on an objective analysis of the specific circumstances of the case. Ultimately, "the limit of reasonable response by the police is set by the scope of the risk." *McArthur*, 531 U.S. at 338 (Souter, J., concurring).

Given the nature of the crime and the evidence sought in the search warrant, there are objective concerns that evidence could be tampered with or destroyed. Although the primary motivating factor was to locate the missing firearm used in the January 17 homicide, the warrant itself sought anything connected to the suspect—who had entered the Residence mere minutes after the homicide was reported. The warrant lists the firearm, documents connected to the suspect, controlled substances "including but not limited to marijuana," and a white t-shirt and black pants (the clothing items worn by the suspect in the surveillance footage). While not as extreme a risk as with drugs, there is potential evidence beyond simply possession of items that could be subject to destruction, such as gunpowder residue or biological evidence. The question then becomes whether the actions of law enforcement were reasonable in response to the scope of that risk, as analyzed in the remaining *McArthur* factors.

Officers appear to have reasonably reconciled their needs with the demands of personal privacy. Both Accardo-Rainey and C.L. were permitted to move freely about the residence while law enforcement waited inside. While they were accompanied by officers, and while Accardo-Rainey clearly expressed his distate for the police and their presence, there is no indication that either individual was otherwise prohibited from engaging in any behaviors. Given the aforementioned evidentiary concerns, an accompanying officer acting in a surveillance role is a reasonable measure to avoid, for example, cleaning and disassembling a firearm to remove evidence. Accardo-Rainey asserts that officers conducted warrantless searches while waiting, but that assertion is entirely unsupported by the factual record, which indicates officers only observed what they could see in plain view once C.L. invited them into the Residence.

Finally, the three-hour period in which officers remained in the Residence without a warrant is not facially unreasonable nor unreasonable in light of established precedent. *Cf. Doe v. Olson*, 691 F. App'x 272, 274 (8th Cir. 2017) (two and a half hours); *McArthur*, 531 U.S. at 328 (two hours); *Segura*, 468 U.S. at 812 (nineteen hours). And Accardo-Rainey presents no argument that there were exceptional circumstances.

In sum, all four *McArthur* factors favor—to varying extents—a finding that law enforcement's conduct in securing the Residence while awaiting issuance of a search warrant was reasonable under the Fourth Amendment. Accardo-Rainey's objections are unfounded and overruled.

### III.    Motion to Dismiss

Accardo-Rainey also moved to dismiss Count Five of the indictment, charging him as

a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8), by arguing that the charging statute itself is unconstitutional following the Supreme Court decision in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S.Ct. 2111 (2022). In both the original motion and his objections, Accardo-Rainey acknowledges that this argument has been expressly foreclosed by the Eighth Circuit. *United States v. Jackson*, 69 F.4th 495 (8th Cir. 2023).

## CONCLUSION

The search warrant itself was issued with probable cause, but even if it was not, the good-faith exception would apply. Furthermore, considering those factors contemplated in *McArthur*, officers acted reasonably in securing the premises while awaiting issuance of a search warrant. After carefully reviewing all other portions of the R&R not specifically objected to, the remainder of the R&R is not clearly erroneous or contrary to law. Therefore, the R&R is accepted in its entirety.

**ORDER**

**IT IS HEREBY ORDERED** that:

1.      Defendant Dmitri Accardo-Rainey's Objections to the Report and Recommendation (Doc. No. 46) are **OVERRULED**;

2.      The Report and Recommendation (Doc. No. 43) is **ACCEPTED**;

3.      Defendant's Motion to Suppress Evidence of an Unlawful Search (Doc. No. 23) is **DENIED**; and

4.      Defendant's Motion to Dismiss the Indictment (Doc. No. 21) is **DENIED**.


Date: February 12, 2024                    _s/ Jerry W. Blackwell_
                                           JERRY W. BLACKWELL
                                           United States District Judge